[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In July of 1995 the plaintiff's house was damaged by a fire caused by lightening. Thus, in September of that year his insurance company appraised the damage and agreed to pay on his behalf the cost to repair the damage. Accordingly, the plaintiff and defendant entered into a written agreement wherein the defendant agreed to repair the house for $148,982.33. (Complaint CT Page 12672 Count One). In fact, the insurance company agreed to pay $149,684.63 toward the repairs (see Amendment to Plaintiff's Exhibit 1) and in fact has paid that amount for the repairs.
Upon signing of the contract, the plaintiff paid to the defendant $49,654.11, but has made no further payments to him for the following reasons set forth in the complaint.
Count One of the Complaint — The defendant failed to complete the work and declined to insert a completion date on the contract.
Count Two — What little work was attempted must be corrected as it was not safe and not in compliance with applicable building codes; the defendant during the course of construction caused further damage to the property of the plaintiff and converted property to his own use.
Count Three — The defendant's breach of the agreement deprived the plaintiff of a place to live causing him financial hardship.
Counts Four, Five, Six and Seven — Defendant failed to comply with Connecticut General Statutes §§ 20-418, et. seq., § 20-420, § 20-426a, § 20-427 (a), § 20-427 (b), § 20-427 (b)(8), § 20-249 (a)(6), § 20-429 (a)(7), § 20-427 (b)(8), § 20-249 (a)(6); § 20-429 (a)(7), § 42-110 (b) (CUTPA).
The Court held a hearing in damages on June 9 and 11, 1998, the defendant having been defaulted. The plaintiff's claim for damages is found on Exhibits 2 and 4. Exhibit 2 lists his claim for out-of-pocket expenditures in the amount of $155,659.41. Exhibit 4 lists other claims together with costs and a claim for attorney's fees. His total claim is $68,624.58.
The plaintiff's claim for damages is broken down as follows (plaintiff's Exhibit's 2 and 4):
1) Out-of-pocket expenditures
Contract price $148,962.33
Expenditures $155,659.41 CT Page 12673
overage $6,697.08
 2) Temporary Housing (Trailer) 1,218.00 (not covered by insurance due to length of time)
3) Propane ordered by defendant 138.30
4) Repair of uneven floor and joists in kitchen 18,900.00
5) Repair of water damaged plywood 24,735.00
 6) Items destroyed by weather left unprotected 7,000.00 by Defendant (kitchen cabinets, vanity, 6 pine doors)
 7) Items taken by defendant (vertical blinds, built-in ironing board) 1,500.00 ---------- $60,188.38
In addition plaintiff seeks costs in the amount of $496.20, plus an attorney's fee in the amount of $7,940.00 (Exhibit 4), bringing his total claim to $68,624.58.
The Court finds that the insurance company paid on the plaintiff's behalf $149,684.63 (not $148,962.33). (See Appendix D attached to the contract, Plaintiff's Exhibit 1). Thus, the Court finds the defendant should be given credit for $722.30. ($149,684.63 less $148,962.33).
In regard to the plaintiff's claim of $9,784.00 paid to Manchester Kitchen Co. for cabinets, the Court finds that the defendant should be given credit for $3,262.00 inasmuch as the defendant had paid that amount for the cabinets (the plaintiff having paid $6,522.00).
The Court finds that the defendant should be given credit for $1,500 inasmuch as the plaintiff failed to present credible evidence as to the value of the vertical blinds or built-in ironing board which he claimed were taken by the defendant.
The plaintiff seeks $7,000.00 for items destroyed by weather which he claimed were left unprotected by defendant. The Court CT Page 12674 finds the defendant is entitled to a credit of $7,000 inasmuch as the plaintiff has failed to present credible evidence as to the value of these items.
The plaintiff seeks $2,719.03 for payments made to Jurovaty/Redshaw Electric. However, the bill under the contract was $3,325 of which the defendant paid $2,200. Thus, the plaintiff is only entitled to $1,125. The defendant is thus entitled to a credit of $1,594.03. (Plaintiff's Exhibit 5).
The plaintiff has a claim for $2,599.99 for Commercial Insulation. However, a review of the bill discloses that the sum of $295.00 is related to work which is not on the original contract. The defendant is entitled to a credit for that amount.
The plaintiff seeks $7,922.44 for payments to Hunt Windows 
Doors in accordance with its contract. Although defendant did in fact pay Hunt $2,000.00, the plaintiff did not receive the benefit of the $2,000.00. It is the court's understanding that the $2,000.00 is being held by Hunt, and it should be turned over to the defendant's attorney to be forwarded to the plaintiff, at which time the defendant shall be given credit for that amount. In any event, the plaintiff is entitled to the full amount of $7,922.44.
The plaintiff seeks $3,200.00 which he paid to J.A.K. Plumbing (installation). The defendant claims that certain items were not included in the contract, such as installation of a hot water heater in the garage and installation of baseboard heating. The court finds that the defendant is entitled to a credit of $300.00 for the installation of these items.
Defendant claims in his brief that the entire amount of $47,733.50 paid to Schneider Builders should be disallowed because there was an extra addition, roofing materials for the addition, a new 3 x 3 roof over the back door, and a furnace room wall noted in the Schneider contract, which items were not called for in the contract (Exhibit 1). Defendant states that these items were not expensed out and were generally lumped together with all other items in the Schneider bill. In this regard the court finds that at trial the defendant withdrew its claim for $12,000.00 paid to Schneider for roofing (thus reducing his claim for payments to Schneider from $59,733.50 to $47,733.50). The court also notes that the plaintiff withdrew its claims for $9,307.02 paid to Mark Hervieux Carpentry for roofing material. CT Page 12675 Thus it appears that the only remaining item in the Schneider bill which was not called for in the original contract was "Build new vented wall in basement." The court notes that the plaintiff himself supplied all the materials for the vented wall and that Schneider spent a couple of hours at the most to install them.
Under the circumstances, the court will not deny the plaintiff's claim for the Schneider bill.
In summary the court finds as follows:
The plaintiff seeks damages in the amount of $60,188.38, plus $496.20 in costs and $7,940.00 for attorney's fees. From the damages claim, the court has deducted the following:
• $ 722.30 ($149,684.63 amount received from insurance company less $148,962.33, the original contract price)
• $3,262.00 (deducted from payments to Manchester Kitchen Co. for cabinets)
• $1,500.00 (deducted from claim for items taken by defendant. $7,000.00 (deducted from claim for items destroyed by weather)
• $1,594.03 (deducted from payments to Jurovaty/Redshaw) $ 295.00 (deducted from payments to Commercial Insulation)
• $ 300.00 (deducted from payments to J.A.K. Plumbing for installation) -------------------- $14,673.33 Total Deductions
Thus, the court finds the plaintiffs damages to be $45,515.05.
Because this was a hearing in damages the court has accepted as true that the defendant was liable for all other claims set forth in Plaintiff's Exhibits 2 and 4. As to the claims for repairs of uneven floor and joists in the kitchen and damaged plywood, there was sufficient evidence presented as to the cost of those repairs. CT Page 12676
The court further finds that the plaintiff's attorney's fees attached to Exhibit 2 are reasonable. The court also finds that the plaintiff is entitled to costs in the amount of $496.20 (including the three deposition charges set forth in Exhibit 4).
Accordingly, judgment may enter for the plaintiff in the amount of $45,515.05, plus costs in the amount of $496.20 and attorney's fees in the amount of $7,940.00.
Frances Allen Judge Trial Referee